## Case No. 12,878.

### Ex parte SIMPSON.

[3 App. Com'r Pat. 453.]

Circuit Court, District of Columbia.    April 1. 1861.

PATENTS—REVIEW OF DECISION BY COMMISSIONER —RENEWAL OF APPLICATION.

[1. The commissioner of patents cannot collaterally review and reverse a decision of his predecessor.]

[2. A rejected applicant, who has withdrawn his application. may renew it, provided the renewed application is made in a reasonable time after withdrawal, and return of the fee.]

[3. The reasonable time for the renewal of a rejected application is to be computed, not from the date of the perfected invention, but from the date of the withdrawal of the application; and under Act March 3, 1839, § 7 (5 Stat. 354), renewal must not be delayed more than two years.   In any view of the case, eight years is an unreasonable delay.]

[4. The fact that the applicant was misled by the contradictory decisions and practice of the patent office as to the time allowed for a renewal of his application after its erroneous rejection, is no ground of relief by the court from the effect of his unreasonable delay.]

[Cited in Colgate v. W. U. Tel. Co., Case No. 2,995.]

[Appeal by George B. Simpson from the decision of the commissioner of patents refusing his application for a patent for insulating telegraph wire with gutta percha.]

DUNLOP, Chief Judge. Geo. B. Simpson, perfected his first application, to the office April 2, 1849. It was rejected September 7, 1849. No appeal was taken, the office notifying him he could appeal or withdraw his claim. It was withdrawn January 21, 1851, and no further steps taken till November 15, 1858. During this period the invention had gone into public use, with Mr. Simpson's knowledge, though, as he insists, against his protest, and without his consent or allowance. On November 15, 1858, he applied to Commissioner Holt for papers, etc., and renewed his application on December 24, 1858. It was rejected in the office by the examiner December 29, 1858; again rejected January 14, 1859, by the board of appeals; and by Mr. Holt, the commissioner, February 2, 1859. No appeal was taken from this decision of Mr. Holt. The last application was filed October 8, 1859, and was rejected by the board of appeals and Commissioner Thomas, on May 9, 1860, from which decision the present appeal to me is taken.

If any relief to Mr. Simpson, in his pursuit of a patent, could be given, his appeal should properly have been taken to the decision of Commissioner Holt, of February 2, 1859. While that decision was unappealed from and unreversed, and the application not withdrawn, the judgment of Commissioner Holt was binding on his successor, the late Commissioner Thomas. Mr. Thomas could not collaterally, review and reverse that decision for the reasons assigned by me in my judg-

ment in Sarowe's Case, of date March 6, 1860 [Case No. 8,093]. Besides, if this was not the law, nothing would be settled, and there would be no end of litigation in the patent office. As this point was not raised by Commissioner Thomas in his decision of May 9 last, and so Mr. Simpson's counsel insists, the office permitted him to refile his case, and have it reconsidered; and for the purpose of ending the controversy I will consider the case as if the appeal was regularly before me on the judgment of Mr. Holt.

Both Mr. Holt and Mr. Thomas refused a patent to Mr. Simpson on the ground of abandonment, and relied on section 7 of the act of March 3, 1839. The case therefore turns on the true construction of that section. It is in these words: "That every person or corporation who has, or shall have, purchased or constructed any newly invented machine, manufacture or composition of matter, prior to the application by the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, manufacture or composition of matter so made or purchased, without liability therefor to the inventor, or any other person interested in such invention, and no patent shall be held to be invalid by reason of such purchase, sale, or use, prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use, had been for more than two years prior to such application for a patent."

This act, and the seventh section of it, has been frequently before the courts of the United States and the judges of several of the circuits and my brother judges of this district. They all seem to agree that a rejected applicant, who has withdrawn his application, may renew it, provided the renewed application is made in a reasonable time after withdrawal and return of the fee. If the office has been in error in the rejection, this reasonable time is to be computed not from the date of the perfected invention, but from the date of the withdrawal. This puts the rejected applicant, as to time, on as good a footing as if the error had not been committed. Nobody contends the error of the office gives an unlimited license as to time. It would be unjust to the public if it did so. The legislature, in this 7th section, it appears to me, has determined what is a reasonable time within which to apply for a patent. It denies a patent to any inventor who permits his invention to go into public use more than two years before the date of his application. I can see no reason why a renewed application, should have more than two years allowed it, computing the time, as I have before said. from the date of the withdrawal. Both classes of applications, original and renewed, are applications for patents, and come within the letter of the statute, and they seem also to be within its spirit. This

act of 1839 is a remedial statute, and was passed, for the benefit of inventors. Before its passage, inventors, according to the course of judicial decisions, were bound at once to disclose their perfected inventions, to the patent office, or they forfeited their right to a monopoly. This act gives them two years, and I do not feel at liberty in any case to enlarge the time without a further impression of the legislative will.

In this case the applicant's nonaction, sleeping on his rights. has been nearly eight years, the withdrawal being on January 21, 1851, and the first renewal December 24, 1858, a delay which must be esteemed unreasonable, even if I am wrong in the views expressed, as to the time construction of section 7 of the act of 1839. Judge Merrick, I understand, has lately held five years an unreasonable delay. In Hite's Case [unreported], referred to by Mr. Dodge in his argument, Judge Mason, then commissioner of the patent office, said: "If it had appeared clearly from the evidence filed that Hite's invention had gone into public use, with the consent or allowance,. more than two years previous to the filing of the present application, I should have refused the patent, and dismissed the case." Judge Mason further said: "The previous error of the office did not justify him in lying by for more than ten years before making his second application. At all events, it would not justify me in dispensing with an observance of the plain provisions of the law. None but the vigilant can ever claim such favors with success. Had it appeared that a single one of these carriages had been sold by Hite, or that it had then gone into public use with his consent or allowance, it would have been sufficient to justify a rejection of the present application." The judge seems to have rested his decision entirely on the invention not going into public use or sale more than two years after the withdrawal and before the renewed application, with the allowance of the inventor.

In Simpson's case he admits throughout he knew the invention was in public use, but that he never permitted or allowed it, or gave his consent, but that he protested against the use. No man can prevent the bar of limitations attaching in the courts of justice by outside continuous claims. He must assert his rights in court within the prescribed time. The policy of the law forbids the recovery of state claims. The debtor is not required interminably to keep the evidences of his discharge, or to provide against their loss or destruction. There are two parties whose rights are to be looked to and guarded. So under the patent laws the public have rights as well as the inventor. Congress intended, and have said in express terms, that when an invention was in public use or on sale more than two years. the inventor who failed to claim it should be barred. The public, after this lapse of time, were to presume the inventor had given it to the public. It might,

and no doubt often would, work injustice to make that a monopoly afterwards which had been contracted for and dealt with as the property of all, and not the sole property of an individual.

Mr. Dodge relies on the fifth office rule, and construes it to mean positive proof of express consent and allowance of the inventor for more than two years. I do not think the rule admits of that construction. If it did, it would invade the rights of the public, and be against law, and void. But the rule does not say that assent and allowance may not be inferred and assumed from want of action on the part of the inventor. If an inventor knows his invention is used by the public, and does not take steps to prevent its use and assert his right, no other inference can be drawn by the public than that he assents to the use, and dedicates it to them. His protest to A. or B., if any avail could be given to it, which could not, would not compromise the rights of C. or D., who had never heard the protest. Besides, as I have before urged, on all the analogies of the law, as to bars and limitations, they can only be avoided, by the assertion of claim judicially, and in the prescribed tribunals, and within the prescribed time. Abandonment within two years would no doubt require a grade of proof higher, and more positive, because the inventor's right is protected within that time. He need not assert it sooner than then, and no inferences of surrender of right ought to be made within that time from mere nonaction. After that time, such inferences are perfectly lawful and natural, because the statute no longer favors delay; and he is, after two years, in default, and chargeable with laches.

It is also urged by Mr. Simpson's counsel that the office decisions have been contradictory, the earlier decisions and practice of the office being to allow an inventor whose application for a patent was wrongfully rejected eight or ten or more years after the erroneous rejection to renew his application and obtain a patent, if he had not sold or used or expressly permitted others to sell or use publicly his invention, and that Mr. Simpson had been misled by the course and practice of the office. I have felt the force of this argument, and have studied the case diligently to see if any legal grounds could be discovered upon which relief could be given to him. I have failed in this effort, and my duty restricts .ne to announcing what I believe to be the mere law of the case. If I have erred in this, the superior tribunals can be appealed to to correct the error, and no one, except Mr. Simpson, could be more gratified at such a correction than myself. Should the law and its tribunals in the last resort fail, the equitable circumstances of his case can be submitted to the legislature. who have the ability to reward him for the benefits he has conferred upon the public.

Upon the whole. I overrule all the reasons of appeal, and do this the 9th May, 1860.

I return, herewith, all the papers, drawings, and models, with this, my opinion and judgment, this 9th April, 1861. The argument of the appellant's counsel was not presented nor the case submitted to me till November 6, 1860. Since that time two sessions of the circuit court and many patent appeals have intervened, occupying my attention, and I have delayed the decision to enable me to search out and see the authorities bearing on this case.